# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

    vs.                                       1:21-cr-01510-KWR-1

CHRISTOPHER MARQUEZ,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Indictment because of unreasonable delay.  Doc. 90.  Having reviewed the pleadings and applicable law, the Court finds that Defendant's motion is not well taken and, therefore, is **DENIED**.

## BACKGROUND

On October 14, 2021, a federal grand jury indicted Defendant with one count of abuse of a child (great bodily harm), in violation of 18 U.S.C. §§ 1153 and N.M. STAT.ANN., 30-6-1(D); one count of assault of a spouse or intimate partner by strangling or suffocating, in violation of 18 U.S.C. §§ 1153, 113(a)(8), and 2266(7)(B); and two counts of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 224(a)(2), and 2246(3).  Doc. 1.  On August 16, 2022, Defendant filed an Ex Parte Motion for an Order to Determine Competency, which this Court granted.  Docs. 45, 46. Defendant was subsequently committed to the custody of the Attorney General on September 27, 2022.  Doc. 51.  Defendant was then admitted to Federal Correctional Institution (FCI), Butner, North Carolina on August 22, 2023.  Doc. 63.  Subsequently, on April 13, 2024, Defendant filed the instant motion, seeking dismissal of the indictment for violation of the federal Speedy Trial Act.  Doc. 90.

**LEGAL STANDARD**

The Speedy Trial Act mandates, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  189 U.S.C. § 3161(c)(1).

Under 18 U.S.C. § 4241(d)(1), if a court determines by a preponderance of the evidence that the defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.  The Attorney General then shall hospitalize the defendant for treatment in a suitable facility, "(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."  18 U.S.C. § 4241(d)(1).

**DISCUSSION**

Plaintiff asserts that upon this Court's Order for Commitment (Doc. 51), in which Defendant was committed to the Attorney General's custody for a period of 30 days to determine his competence, Mr. Marquez waited almost eleven months in custody at Otero County Prison Facility until his 30-day evaluation.  Doc. 90 at 3.  Mr. Marquez's almost eleven-month wait was eleven times longer than the period of his competency commitment and therefore, far longer than necessary and an unreasonable length of time for the Attorney General to select a suitable Bureau of Prisons institution and transport Defendant.  *Id.*  Defendant argues while a Court can commit a defendant to the custody of the Attorney General for treatment for a period not to exceed four

months, several courts have concluded that the four-month limit as outlined under 18 U.S.C. § 4241 is measured from the time a defendant arrives at a treatment facility.  Doc. 90 at 5 citing, *United States v. Lara*, 671 F. Supp. 3d 1257 (D.N.M. 2023) citing, *United States v. Donnelly*, 41 F.3d 1102, 1105 (9th Cir. 2022).  However, Defendant argues the pre-hospital time spent in custody awaiting designation and transport cannot be indefinite and is measured via a reasonableness standard as held in *Jackson v. Indiana*, 406 U.S. 715 (1972).  According to *Lara*, *Jackson*'s reasonableness standard applies to the period of pre-hospitalization custody.  Doc. 90 at 6 citing, *Lara*, 671 Fed.Supp.3d at 1262 citing, *Donnelly*, 41 F.3d at 1106.  Therefore, Defendant asserts that Mr. Marquez's near eleven-month wait for placement at FCI Butner violated his due process rights and was patently unreasonable.  Doc. 90 at 4, 7.[1]  Furthermore, Defendant asserts that the delay between this Court's Order and his arrival at FCI Butner was presumptively unreasonable under the Speedy Trial Act.  *Id*. at 5.  Thus, the charges against Defendant should be dismissed. *Id*.  This Court disagrees with *Donnelly* and concludes that Defendant's detention was reasonably related to his commitment and did not violate Due Process.  Accordingly, this Court disagrees with Defendant and finds that the United States complied with both 18 U.S.C. § 3161(c)(1) and 18 U.S.C. § 4241(d)(1), and therefore, dismissal is not warranted.

I.   **Defendant's Pre-Hospitalization Custody Period Did Not Violate 18 U.S.C. § 4241(d)(1)**

In interpreting statutes, a court must start with the plain language to "interpret the words of the statute in light of the purposes Congress sought to serve…read[ing] the words of the statute in their context and with a view to their place in the overall statutory scheme." *Been v. O.K. Indus.*,

---

[1] Mr. Marquez specifically contends that not every day of the eleven months should qualify as excludable delay under the Speedy Trial Act.  Instead, he contends that because at least seven months of delay was in excess of the maximum time allowed by Congress, this period violated the Speedy Trial Act.  Doc. 90 at 7.

*Inc.*, 495 F.3d 1217, 1227 (10th Cir. 2007) citing, *Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1233-34 (10th Cir. 2006).   "When that language is clear, we ordinarily end our analysis…[i]f, however, the language leaves us uncertain, we turn to the legislative history and policy of the statute to deduce Congress's intent." *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1221 (10th Cir. 2018), aff'd sub nom. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 203 L. Ed. 2d 390 (2019) citing, *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014). "Courts indulge 'a strong presumption that Congress expresses its intent through the language it chooses. Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it.'" *United Kingdom Ministry of Defence v. Trimble Navigation Ltd.*, 422 F.3d 165, 171 (4th Cir. 2005) citing, *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000).

   This Court concludes that based on the text of 18 U.S.C. § 4241(d), the four-month time limit prescribed in the statute does not begin until a defendant is hospitalized at a facility for evaluation.  The critical text of 18 U.S.C. § 4241(d)(1) at issue states, "The Attorney General shall hospitalize the defendant for treatment in a suitable facility – (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."  From the plain language and construction of the statute, the operative clause, "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility[,]" is limited and constrained by the subsequent clause, "for such a reasonable period of time, not to exceed four months[.]"   The plain meaning, context, and structure of the statute indicate that once hospitalization for determining a defendant's competency evaluation commences, such a hospitalization is limited to no longer than four months.  Several other courts, including this Court,

have previously held that the four-month limit within 18 U.S.C. § 4241(d) commences upon hospitalization. *United States v. Delorme*, No. CR 19-2322 JB, 2023 WL 8020262 * 18 (D.N.M. Nov. 17, 2023); *Lara*, 671 F.Supp.3d at 1261 citing, *Donnelly*, 41 F.4th at 1105; *United States v. Castrellon*, No. 22-cr-00112, 2023 WL 2330688 (D. Colo. March 1, 2023); *United States v. Leusogi*, No. 2:21-CR-32, 2022 WL 11154688 (D. Utah Oct. 19, 2022); *United States v. Wazny*, No. 3:21-CR-247, 2022 WL 17363048 (M.D. Pa. Dec. 1, 2022); *United States v. Belgarde*, No. 3:21-cr-58, 2022 WL 540932 (D.N.D. Feb. 23, 2022).  18 U.S.C. § 4241(d) is otherwise silent as to the timeframe a defendant may need to wait for transport to a suitable facility for hospitalization. Accordingly, while the time a defendant must wait is required to comply with due process, § 4241(d) does not place a specific timeframe on pre-hospitalization detention. *Jackson*, 406 U.S. at 738-39.

Here, Defendant admits that the four-month limit for hospitalization only applies to the time spent in a Bureau of Prisons facility for a competency evaluation, which is not contested in the case of Mr. Marquez.[2]  Doc. 90 at 6.  From the plain statutory meaning, 18 U.S.C. § 4241(d) does not place a time constraint on pre-hospitalization detention – rather, the statute is silent as to how long pre-trial hospitalization can last.  Given the statute's omission of a temporal constraint on the length of pre-hospitalization detention, a deliberate decision by Congress, this Court is not at liberty to insert its own preferred language or meaning into the statute.  *Borden v. United States*, 141 S. Ct. 1817, 1829 (2021).  Therefore, given the silence of § 4241(d) as to the temporal limits

---

[2] Defendant was admitted to FCI Butner on August 22, 2023, and a forensic evaluation produced on October 5, 2023 – a hospitalization well below the four-month limit in 18 U.S.C. § 4141(d).  Docs. 63, 67.

of pre-hospitalization detention and the length of this Defendant's hospitalization, less than four

months, this Court concludes that no statutory violation of § 4241(d) occurred.[3] [4]

## II.     This Court Finds that Defendant's Pre-Hospitalization Detention Did Not Violate Due Process

Defendant argues the length of his pre-hospitalization detention violated his due process

rights, citing *Lara*, in which an opinion in this district previously found in applying *Jackson* and

*Donnelly*, that pre-hospitalization detention greater than four months violated due process.  This

Court respectfully rejects *Donnelly*'s reasoning in its application of *Jackson*.  This Court concurs

with its prior approach and reasoning adopted in *Delorme*.  *Delorme*, 2023 WL 8020262 *20.  The

Court does not agree with *Donnelly*'s reasoning that, given the four-month hospitalization limit in

§ 4241(d), a pre-hospitalization detention period greater than four months is per se unreasonable

under *Jackson*.  *Delorme*, 2023 WL 8020262 *20; *Jackson*, 41 F.4th at 1106.  Accordingly, this

Court finds under *Jackson*, Defendant's due process rights were not violated.

Under *Jackson*, the United States Supreme Court established the due process parameters

regarding pre-trial commitment and prohibited the indefinite detention of defendants incompetent

to stand trial.  While the Supreme Court did not establish strict parameters as to when a defendant's

detention qualified as a due process violation, the Court held that "a person charged by a State

with a criminal offense who is committed solely on account of his incapacity to proceed to trial

cannot be held more than the reasonable period of time necessary to determine whether there is a

substantial probability that he will attain that capacity in the foreseeable future."  *Jackson*, 406

U.S. at 738.  According to the Court, "due process requires that the nature and duration of

---

[3] *Id.*

[4] The Ninth Circuit in *Donnelly* found a statutory violation of § 4241(d) in its application of *Jackson*.  As this Court will explain below, it rejects *Jackson*'s approach.

commitment bear some reasonable relation to the purpose for which the individual is committed." *Id*. If it is unlikely a defendant will attain capacity, a State, "must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Id*. Although *Jackson* does not prescribe specific time limits to determine whether a due process violation has occurred, the Court found the defendant's three-and-a-half-year commitment unreasonable based on parameters guided by reasonableness instead of a hard and fast rule as to the length of commitment. *Id*. at 738-739.

In *Donnelly*, a case in which the defendant challenged the length of his pre-hospitalization detention period, the Ninth Circuit reasoned that given the "reasonable relation" requirement under *Jackson*, "to determine the permitted length of the pre-hospitalization commitment period…we must ask what purpose that period serves." *Donnelly*, 41 F.4th 1102, at 1106. According to 18 U.S.C. §§ 4241(d), 4247, the Attorney General must find a "suitable facility" in which to hospitalize a defendant and arrange for transportation. Therefore, in order to comply with *Jackson*, the pre-hospitalization commitment must be limited to a reasonable time required to accomplish these tasks. *Donnelly*, 41 F.4th at 1106. In applying *Jackson* to § 4241(d), the Ninth Circuit in *United States v. Donnelly* found that *Jackson*'s " "reasonable relation" requirement [does not] permit[] a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself." 41 F.4th 1102, 1106 (9th Cir. 2022). Therefore, a pre-hospitalization detention period of greater than four months constituted a statutory violation of § 4241(d).[5]

---

[5] In addition to the arguments that follow, as this Court previously discussed, the plain text of § 4241(d) does not prescribe a time limit as to a defendant's pre-hospitalization custody, and to conclude that this time must be less than four months – a limit Congress placed *only* on hospitalization - is a departure from the statutory text and its legislative history. 18 U.S.C. § 4241(d); S. REP. 98-225, at 237. Given the plain meaning of the statute, this Court

This Court respectfully disagrees with the approach taken by the Ninth Circuit in *Donnelly*. This Court finds the reasoning in *Donnelly* to be unsupported in the statutory text of § 4241(d). As to the Ninth Circuit's reasoning in *Donnelly* that a pre-hospitalization commitment period of greater than four months is per se unreasonable, such an argument contradicts the underlying purposes of § 4241(d). In order to hospitalize a defendant for treatment not to exceed four months under § 4241(d), hospitalization is dependent upon the Attorney General finding a "suitable facility." "Suitable facility" is defined as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2). In addition to the Attorney General identifying and transporting a defendant to such a facility, suitability of a facility depends on BOP locations that actually have available beds and sufficient staffing so as to be able to conduct a mental competency evaluation in less than four months as required by law. 18 U.S.C. § 4241(d). In Mr. Marquez's case, as he concedes, in 2022 and 2023, the Bureau of Prisons faced *significant* backlog and delays in conducting mental competency evaluations. Doc. 90 at 4. A Bureau of Prisons facility without available bedspace and adequate staffing was naturally not a suitable facility to evaluate defendants.

Given these challenges, under *Jackson*'s "reasonable relation" requirement, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." 406 U.S. 715, at 738. Despite the long and extensive delays for a BOP mental competency evaluation in the aftermath of the COVID-19 pandemic, the delay in Mr. Marquez's case still bore a reasonable relation to his commitment under § 4241(d). *Delorme*, 2023 WL 8020262 *23 citing, *Lara*, 2023 WL 3168646; *United States v. Castrellon*,

---

declines to adopt the approach used by the Ninth Circuit in *Donnelly* – in light of the statutory text and its silence as to the temporal limits of pre-hospitalization custody, imputing *Jackson*'s "reasonable relation" requirement to then find a statutory violation. 41 F.4th at 1105.

No. 22-cr-00112, 2023 WL 2330688 (D. Colo. March 1, 2023; *United States v. Black*, No. CR 21-009, 2022 WL 17170707 (N.D. Okla. November 22, 2022); *United States v. Leusogi*, No. CR 21-32-TS, 2022 WL 11154688 (D. Utah 2022). As Defendant states, "delays ranging from eight to eleven months before a defendant was delivered to a BOP facility for a psychiatric examination were common in this District in 2022 and 2023[.]" Doc. 90 at 4. Mr. Marquez asserts he waited nearly eleven months for his competency evaluation after this Court ordered his commitment. *Id*. at 3. While Mr. Marquez's wait for a competency evaluation was unfortunate, the Attorney General of the United States was not holding Mr. Marquez indefinitely, but rather the wait time he experienced was unfortunately all too common and did bear a "reasonable relation" to his hospitalization under § 4241(d). Because of the extensive backlog, delays, and understaffing at the BOP for competency evaluations during this period, there was not an available bed for Mr. Marquez. Thus, the length of Defendant's pre-hospitalization detention was directly because of the lack of bedspace to evaluate Mr. Marquez.

Unlike the Petitioner in *Jackson*, Mr. Marquez had not been committed for a period of roughly three and a half years nor has he asserted his commitment was tantamount to a life sentence due to questions of competency restoration. *Jackson*, 406 U.S. 715, at 737-38. Even if Mr. Marquez's wait was longer than average, given the extensive delays defendants faced for a BOP competency evaluation, Defendant's pre-hospitalization detention period was reasonably related to the purpose for which he was committed.[6] *Jackson*, 406 U.S. at 738. Therefore, the wait Mr. Marquez faced, while regrettable, does not rise to a due process violation under *Jackson*.[7]

## III.   Defendant Has Not Been Deprived of a Speedy Trial

---

[6] Mr. Marquez's refusal to cooperate on at least one occasion in the competency evaluation process certainly did not hasten the evaluation process and delay he now asserts. Doc. 48 at 5.

[7] *See* footnote five.

Defendant next claims that because the eleven-month delay between his commitment and arrival at FMC Butner was unreasonable, "not every day of that eleven months should qualify as excludable delay under the Speedy Trial Act" in violation of the 18 U.S.C. § 3161 and the Sixth Amendment.  Doc. 90 at 7.  This Court disagrees and finds Defendant has not been deprived of a speedy trial under the Sixth Amendment and the Speedy Trial Act.

Among its guarantees, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "Although the right is somewhat amorphous, the remedy is severe: dismissal of the indictment."  *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014) (quoting *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010)).

A court must analyze a four-factor framework to determine whether a delay has caused a defendant to be deprived of his right to a speedy trial.  *See Barker v. Wingo*, 407 U.S. 514, 530–32 (1972).  The Court must weigh the following factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant."  *Margheim*, 770 F.3d at 1325–26 (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)).  The first factor "functions as a triggering mechanism, and the remaining three factors need only be assessed if the delay is long enough to be presumptively prejudicial."  *Id.* at 1326 (internal citations and quotations omitted).

**A.  The Length of Delay is Presumptively Prejudicial**

The constitutional right to a speedy trial "attaches when the defendant is arrested or indicted, whichever comes first."  *United States v. Black*, 830 F.3d 1099, 1112 (10th Cir. 2016) (citations omitted).  "Arrest" means federal arrest.  *See United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir. 1993); *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir. 2014) ("A defendant's

constitutional speedy-trial right attaches when he is arrested or indicted on federal charges, whichever come[s] first."). Thus, the Sixth Amendment right to speedy trial attaches at the point of federal criminal charges and is "not triggered by prior state arrest or indictment." *Allen*, 986 F.2d at 1356; *see also United States v. Primm*, 1996 WL 316462, at *2 n.1 (10th Cir. 1996) (rejecting the argument that Sixth Amendment protection was triggered by defendant's initial arrest for state charges where there was a delay of more than twenty-eight months between the state arrest and subsequent federal indictment).

To trigger a speedy trial analysis, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Seltzer*, 595 F.3d at 1176 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). Generally, the length of delay crosses the threshold from ordinary to presumptively prejudicial when it exceeds a year. *Id.* If a defendant makes a showing of presumptive prejudice, then the Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 652. "The longer the delay, the more likely it is that the first factor will weigh in the defendant's favor." *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010). In making this assessment, the Court "should take into consideration the nature of the charges." *Id.* (quoting *Barker*, 407 U.S. at 531).

Here, Defendant argues that because of the delay in delivering him to FTC Butner for a mental competency evaluation, this constituted a violation of the Sixth Amendment and the Speedy Trial Act, and therefore, the Indictment should be dismissed. Doc. 90 at 1-3. The Government argues through Defendant's numerous continuances, neither the United States nor this Court have deprived Defendant of a speedy trial. Doc. 96 at 7. However, the United States concedes, and this Court agrees, that delay crosses the "presumptively prejudicial" line of one year, which weighs in

Defendant's favor.  Doc. 96 at 9; *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir.2006).  Mr. Marquez was indicted on October 14, 2021.  Doc. 1.  Over two years is more than twice what is presumed to be ordinary.  *Seltzer*, 595 F.3d at 1176 citing, *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).  However, Defendant has sought numerous continuances, which mitigate against this first factor.  Defendant filed continuances on December 20, 2021 (Doc. 26); March 22, 2022 (Doc. 40); June 8, 2022 (Doc. 43); September 26, 2022 (Doc. 49); December 19, 2022 (Doc. 55); March 27, 2023 (Doc. 58); June 26, 2023 (Doc. 60); September 25, 2023 (Doc. 65); December 26, 2023 (Doc. 77); March 21, 2024 (Docs. 82); and May 13, 2024 (Doc. 102).  In addition to the numerous continuances, as this Court previously discussed, Defendant underwent a mental competency evaluation, in which he refused to fully cooperate. Doc. 48 at 5.  Nevertheless, despite these mitigating factors, given the lengthy delay and the simplicity of this case, this Court finds the first factor favors Defendant.

**B.  The Government Has Presented Acceptable Reasons for the Delay**

The second factor, the reason for delay, requires the court to "assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion."  *Margheim*, 770 F.3d at 1326.  The Government has the burden to "present acceptable reasons for the delay."  *Id.*  Then, the Court must determine whether the Government's delay was willful, such as an attempt to stall the defense, or the result of a "neutral reason," such as negligence by the prosecution due to heavy caseloads.  *Id.*  Deliberate or willful conduct weighs heavily against the prosecution, while a "neutral reason" weighs less heavily against the government.  *See Barker*, 407 U.S. at 531; *United States v. Vaughan*, 643 F. App'x 726, 730 (10th Cir. 2016) ("[C]ourts have held that the reason-for-delay factor weighs against the government when it cannot explain its failure to arrest or notify the defendant of an indictment.").  However, "[d]elays attributable to the defendant do not weigh

against the government." *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015) (finding defendant responsible for delays where he filed more than forty unique motions, including several requesting that the district court extend filing deadlines or continue hearings and changed counsel several times during the course of the proceedings).

Here, this Court finds this factor does not weigh against the United States.   Delays attributable to defendant or due to motions filed or Defendant's continuances do not weigh against the Government.   *United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir. 1990) citing, *United States v. Loud Hawk*, 474 U.S. at 316–17, 106 S.Ct. at 656–57 (quoting *United States v. Auerbach*, 420 F.2d 921, 924 (5th Cir.1969), cert. denied, 399 U.S. 905, 90 S.Ct. 2195, 26 L.Ed.2d 560 (1970)); *United States v. Beery*, 678 F.2d 856, 869 (10th Cir.1982); *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006); *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014); *United States v. Larson*, 627 F.3d 1198, 1209–10 (10th Cir. 2010).   As this Court noted above, Defendant has sought numerous continuances.   *See supra* at 12.   In addition to Defendant's motions, the delay from Mr. Marquez's competency evaluation cannot be attributed to the United States.   18 U.S.C. § 3161(h)(1)(A).   The United States did not have control over Defendant's competency evaluation, which is further compounded by Defendant's lack of cooperation.   *Id.*; Doc. 48 at 4-5; *United States v. Lacey*, No. 1:22-CR-1907-WJ, 2024 WL 833808 *5 (D.N.M. Feb. 28, 2024) citing, *United States v. Loya-Rodriguez*, 672 F.3d 849 (10th Cir. 2012).   Defendant's lack of cooperation undoubtedly delayed his competency evaluation, which also cannot be attributed to the United States.   *United States v. Stanley*, 396 F. App'x 482, 485–86 (10th Cir. 2010); Doc. 48 at 4-5.   Defendant does not assert or identify deliberate or negligent categories of delay on the part of the United States.   Accordingly, this Court finds that this factor weighs in favor of the Government.

**C.  Defendant Asserts His Right to Speedy Trial, but his Conduct Indicates Otherwise**

The third factor assesses whether a defendant asserted his right to speedy trial without unreasonable delay.  The Court may "assign strong weight to the defendant's assertion of his constitutional speedy-trial right" and may "weigh the frequency and force of [a defendant's] objections' to the delay." *Margheim*, 770 F.3d at 1328.  "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." *See Barker*, 407 U.S. at 527.  Thus, a defendant does not bear the burden of protecting this right, particularly if he is uninformed that formal proceedings triggering that right have commenced against him.  *See Doggett*, 505 U.S. at 653–54 (1992); *see also Vaughan*, 643 Fed. Appx. at 731.  However, the Court may consider "whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Batie*, 433 F.3d at 1291.

The Court finds that Defendant has asserted his right to speedy trial.  However, notwithstanding Defendant's request for a speedy trial, the Court cannot conclude that his conduct over the past two and a half years evinces a desire to actually have a speedy trial.  In addition to changing counsel, a competency evaluation with uncooperative behavior, and pretrial motions, Mr. Marquez has sought numerous continuances from this Court for a range of reasons.  *See supra* at 12.  Furthermore, Defendant first asserted his concerns regarding a speedy trial on the eve of trial – April 13, 2024.  Doc. 90.

The Court finds that Defendant's explicit assertion of his right to a speedy trial cannot entirely nullify the significance of delays that Defendant both requested and caused through his unwillingness to engage with his previous counsel, which in turn caused new counsel to be appointed, and further necessitated additional time for counsel's familiarization with Defendant's case, the relevant facts, discovery, witnesses, and evidence to mount an adequate defense.  *See*

14

*Margheim*, 770 F.3d at 1329 ("While it is apparent that Mr. Margheim was not interested in avoiding trial altogether…it is equally obvious that he was interested in other time-consuming strategies for a significant portion of the delay period. Indeed, had Mr. Margheim focused completely on proceeding to trial, we find it doubtful that he would have severed ties with three attorneys."). Therefore, Defendant's actual conduct and tactical litigation decisions contradict his assertion of his desire to have a speedy trial. *Tranakos*, 911 F.2d at 1429. ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). The Court concludes that this factor weighs against Defendant.

### D.  Defendant Has Not Shown Definite Prejudice

Under the final *Barker* factor, it is the defendant who bears the burden to demonstrate that his Sixth Amendment right to a speedy trial was prejudiced by the delay. *See Seltzer*, 595 F.3d at 1179. Although a delay may be presumptively prejudicial under the first *Barker* factor, the Court "will relieve a defendant of his separate burden to present specific evidence of prejudice…only if there is evidence of an extreme delay." *Black*, 830 F.3d at 1121–22 (internal quotations and citations omitted); *see Seltzer*, 595 F.3d at 1180 n.3 (requiring a delay of six years to constitute extreme delay). If a defendant cannot show "extreme delay," the defendant must

> make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect. These interests include (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) [the] minimization of the possibility that the defense will be impaired.

*Black*, 830 F.3d at 1122 (internal citations and quotations omitted).

Of these interests, "the most serious is the 'hindrance of the defense' because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Seltzer*, 595 F.3d at 1179–80 (quoting *Barker*, 407 U.S. at 532). "A defense is hindered in the sense that the defendant was not able to defend the charges against him to the extent he desired if, for example,

as a result of the delay, the defense no longer had access to certain evidence or could no longer use a witness because that witness died before trial." *See Larson*, 627 F.3d at 1209 (internal quotations and alterations omitted) (quoting *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir.2009)). "That the government may have strengthened its case during the delay does not implicate this interest." *Id.*

Here, the delay in this case is not sufficiently extreme to allow Defendant to rest on a presumption of prejudice. Defendant argues he was prejudiced because of his mental competency evaluation delay and through potentially ineffective counsel. Doc. 90 at 5, 9-10.

On the first interest, the Court recognizes that Defendant has been subjected to difficult conditions given his lengthy wait for a mental competency evaluation. This factor favors Defendant.

As to the second interest, the Court recognizes that Defendant has experienced anxiety and concern because of the delay in his trial date. However, Defendant must "show some special harm suffered which distinguishes his case." *See Hicks*, 779 F.3d at 1169 (quoting *United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012)). This harm must be different than "any other arrestee awaiting trial." *See United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994). Here, Defendant fails to identify such harm. The Bureau of Prisons had an extensive backlog in conducting mental competency evaluations, and therefore, Defendant's delay is certainly not unique. As such, his factor weighs in favor of the Government.

Finally, under the third and most important interest, Defendant has failed to show that the delay has impaired his defense. Defendant asserts that he was subject to unreasonable delay for a mental competency evaluation, which violated his right to a speedy trial. Doc. 90 at 10-11. Defendant further alluded to his attorneys' "inaction and indifference." Doc. 90 at 10. However,

Defendant has not demonstrated any cognizable hindrance to his defense.  Defendant has failed to "show definite and not speculative prejudice."  *Margheim*, 770 F.3d at 1331 (quoting *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir.1998).

**E. A Balancing of the Factors Leads to the Conclusion that Defendant's Sixth Amendment Right to Speedy Trial Has Not Been Violated**

The Court's analysis is a balancing test in which none of the singular factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Seltzer*, 595 F.3d at 1181 (citation omitted).  However, "[f]ailure to show prejudice caused by the delay is nearly fatal to a speedy trial claim."  *Hicks*, 779 F.3d at1168 (10th Cir. 2015) (internal citations and quotations omitted).

In the balancing of these factors, the Court finds that the lack of prejudice, while not dispositive by itself, is fatal to Defendant's motion.  Here, the first factor, length of delay, was presumptively prejudicial because the delay was over one year, which weighs in Defendant's favor.  The second factor, reason for delay, was the result of Defendant's numerous continuances, a competency evaluation in which he did not completely cooperate, pretrial motions, and change of counsel.  This factor weighs against Defendant.  The third factor, assertion of speedy trial right, weighs against the Defendant because although Defendant asserted his speedy trial right, his actions indicated otherwise.  Finally, the prejudice factor weighs against Defendant because he did not carry the burden to demonstrate that the delay prejudiced his case.  Notwithstanding that he faced lengthy competency evaluation delays and his disagreements and frustration with previous counsel, the Court is unable to find that Defendant suffered any specific prejudice in terms of impairment of his defense.  In sum, no violation of Defendant's Sixth Amendment speedy trial guarantee occurred.

IV.     **Speedy Trial Act**

The Speedy Trial Act serves to "protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." *See United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993). The Act provides, in part, that a defendant's trial "shall commence within seventy [70] days from the filing date of the…indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). If the Government fails to comply with this time limit, the charges in the complaint must be dismissed, with or without prejudice. *See id.* at § 3162(a)(1). Generally, however, a state arrest does not trigger the Speedy Trial Act's clock, "even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense." *See Allen*, 986 F.2d at 1356 (quoting *United States v. Mills,* 964 F.2d 1186, 1189–90 (D.C. Cir. 1992)); *see also United States v. Asfour*, 717 F. App'x 822, 825 (10th Cir. 2017).

The Act also includes several tolling provisions. The Act provides that certain periods of delay "shall be excluded in computing the time…within which the trial of any such offense must commence." 18 U.S.C. § 3161(h). Enumerated events which are excluded from the Speedy Trial Act's prescribed 70-day period, thus tolling the speedy trial clock include, but are not limited to:

- "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," *id.* § 3161(h)(1)(D);

- "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," *id.* § 3161(h)(1)(H); and

- "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A), commonly known as an "ends-of-justice continuance."

"[T]hese subsections work in concert such that if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the motion is taken under advisement." *See Margheim*, 770 F.3d at 1318 (quoting *United States v. Williams*, 511 F.3d 1044, 1048 (10th Cir. 2007).

Federal Rule of Criminal Procedure 45 governs the computation of time under the Speedy Trial Act. Generally, for counting purposes, the day on which the speedy trial clock begins to run is **day zero**.[8] *See* Fed. R. Crim. P. 45(a)(1); *see also Zedner v. United States*, 547 U.S. 489, 495 (2006) (calculating 91 days between January 31, 1997, status conference granting defendant's motion to continue and defendant's next court appearance on May 2, 1997).

Defendant argues that the United States has exceeded the 70-day limit. Defendant argues that "not every day of his almost eleven months of "dead time" in the Otero County Prison Facility awaiting designation and transport to FMC Butner should count as time which is properly excluded under the Speedy Trial Act." Doc. 90 at 8. According to Mr. Marquez, because his arrival delay at FMC Butner was presumptively unreasonable, his case should be dismissed under the Speedy Trial Act because the time within which he may be tried has elapsed. Doc. 90 at 5.

---

[8] Delays resulting from pretrial motions are calculated differently. For motions that are filed and remain pending, the Court must count the day the motion was filed as **day one** because this is provided for under the Speedy Trial Act, which excludes the period "from the filing of the motion through the conclusion of the hearing on." *See* 18 U.S.C. § 3161(h)(1)(D); *see, e.g.*, *United States v. Williams*, 511 F.3d 1044, 1050 n.5 (10th Cir. 2007) ("We nonetheless assume in our calculations that the excludable period 'from the filing of the motion through the conclusion…of such motion' includes both the date of resolution of any pretrial motion and the date of filing."); *United States v. Bell*, 925 F.3d 362, 374 n.1 (7th Cir. 2019) ("For continuances, Rule 45(a) and the Supreme Court count from the day after the case is continued to the date of the next appearance…For motions that are filed and remain pending, the Supreme Court and the Seventh Circuit count from and including the date the motion was filed through and including the date it was resolved."); *United States v. Flores*, No. 19-CR-522-WJM, 2021 WL 1521309, at *5 n. 3 (D. Colo. Apr. 16, 2021) ("In other words, a motion that falls under subparagraph (D) [of 18 U.S.C. § 3161(h)] will toll the Speedy Trial clock for at least one day, even if resolved the same day.").

Using the date of Defendant's initial appearance as a point of reference, *see* 18 U.S.C. §

3161(c)(1), or day zero, the Speedy Trial clock began running on November 12, 2021, and stopped

running thirty-one days later on December 13, 2021, when Defendant filed his Notice of Appeal

of Detention Order.  Doc. 23.  Defendant's motion triggered exclusion of time under 18 U.S.C. §

3161(h)(1)(D).  *United States v. Loughrin*, 710 F.3d 1111, 1120 (10th Cir. 2013), aff'd, 573 U.S.

351, 134 S. Ct. 2384, 189 L. Ed. 2d 411 (2014).  Even if Defendant's Notice of Appeal did not

stop the Speedy Trial clock, the clock would have also stopped when the Court entered the first

ends-of-justice continuance on December 20, 2021.  Docs. 26, 28.  *See, e.g.*, *United States v.*

*Gonzales*, 137 F.3d 1431, 1434 (10th Cir. 1998) ("Gonzales was reindicted on November 30, 1995,

but did not make his initial appearance until May 21, 1996. The clock began to run on May 22,

1996, and did not stop until June 28, 1996, when he filed a motion in limine and a request for

admissions.").  Defendant's December 20, 2021, continuance tolled the clock until April 11, 2022,

*Id*.  Defendant filed another ends-of-justice continuance on March 22, 2022, which this Court

granted the following day, which tolled the Speedy Trial clock until July 11, 2022.  Docs. 40, 41.

Defendant then filed another ends-of-justice continuance, which this Court granted, on June 9,

2022, and Defendant sought a competency determination on August 16, 2022.  Docs. 43, 44, 45.

Defendant does not specifically assert that Speedy Trial Act violations occurred because of ends-

of-justice continuances and pretrial filings, but rather that the length of his pre-hospitalization for

a competency evaluation violated the Speedy Trial Act.  Such a delay is excluded under 18 U.S.C.

§ 3161(h)(1)(A).

The Court summarizes as follows.  Between November 12, 2021, when Defendant first

appeared in federal court, to April 13, 2024, when Defendant filed this instant motion for dismissal

of the Indictment, 883 days had passed.  At least 813 of those days must be tolled or Defendant

did not go to trial within 70 Speedy Trial Days.  The Court finds that 852 days were tolled.

The Speedy Trial clock ran for 31 days from Defendant's initial appearance on November

12, 2021, until December 13, 2021, when Defendant filed his Notice of Appeal of Detention Order.

Following this, numerous ends-of-justice continuances were entered by the Court, including

Defendant's competency evaluation process from 2022 to 2023.  Because Defendant's Notice of

Appeal of Detention Order, numerous ends-of-justice continuances, and competency evaluation

records were adequately supported by the record, the 852-day period from December 13, 2021,

through April 13, 2024, is excludable under 18 U.S.C. § 3161(h)(7)(A).  Overlapping with the

most recent continuance in this matter, the period from April 13, 2024, to the present day is

excludable under § 3161(h)(1)(D) due to pending motions filed by Defendant and the United

States, including this motion, in anticipation of trial.  Thus, the Government correctly argues that

neither the United States nor this Court have deprived Defendant of a speedy trial under the Speedy

Trial Act.

**V.      Even if There Was a Violation of 18 U.S.C. § 4241(d), Dismissal of Indictment
Would be Inappropriate**

Defendant asks this Court to dismiss his Indictment because of a violation of 18 U.S.C. §

4241(d).  This Court finds that even if 18 U.S.C. § 4241(d) were violated, dismissal would be an

inappropriate remedy.

18 U.S.C. § 4241(d) is silent as to the appropriate remedy should a violation occur.  The

Ninth Circuit has previously held, and this Court has previously concurred that for violations of

18 U.S.C. § 4241(d), "dismissal is not the appropriate remedy [because] Congress did not prescribe

dismissal of the indictment as a remedy for violation of the time limits imposed…as it has…in the

context of violations of time limits imposed by the Speedy Trial Act." *Delorme*, 2023 WL 8020262 at *27 citing, *Donnelly*, 41 F.4th at 1106 (citing 18 U.S.C. § 3162(a)).  Because Congress has not prescribed a remedy under 18 U.S.C. § 4241(d), unlike the Speedy Trial Act, this Court would not insert one where Congress has declined to do so.  *Borden v. United States*, 141 S. Ct. at 1829.  Unlike *Donnelly* or *Lara*, Defendant's hospitalization and competency evaluation have been complete for some time.  *Donnelly*, 41 F.4th at 1107; *Lara*, 671 F.Supp.3d at 1264.  *Donnelly* states that in determining an appropriate remedy, Courts should look to the interests of the parties and the relevant statutory scheme.  *Id*.  Here, Defendant has not sought injunctive relief, nor would injunctive relief be appropriate given his competency evaluation is complete.  Rather, Defendant seeks dismissal based on a statutory violation, which this Court previously addressed.  Therefore, given 18 U.S.C. § 4241(d)'s silence as to an appropriate remedy, the remedy Defendant seeks, and this Court's previous ruling in *Delorme*, this Court finds even if 18 U.S.C. § 4241(d) were violated, dismissal would be inappropriate.

### CONCLUSION

For these reasons, the Court finds that there was no violation of Defendant's statutory, due process, or constitutional speedy trial rights.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **(Doc. 90)** is hereby **DENIED**.

_/S/_

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE